IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RREF SNV ACQUISITIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File |
| | ) | No. 1:11-cv-04171-TWT |
| GREENVILLE, AL HOTEL, LLC, | ) | |
| ANJEBHAI D. PATEL, | ) | |
| DHARMENDRA D. PATEL, | ) | |
| KISHOR PATEL and HAMENT D. | ) | |
| PATEL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

NOTICE OF FILING RECIEVER'S MONTHLY REPORT
(JANUARY 2012)

COMES NOW, McGlashan Hospitality, LLC, the Court-appointed receiver ("Receiver") under that certain Order Appointing Receiver ("Order") dated January 11, 2012 [Docket No. 14], submits this Notice of Filing Receiver's Monthly Report as follows:

1. The Order directs the Receiver to prepare monthly financial reports, regarding the value, profitability, operations and expenses of the Greenville, Alabama Hotel ("Hotel").

2.  Pursuant to said Order, attached hereto as <u>Exhibit A</u> is the Receiver's

Monthly Report for the month of January, 2012.


Respectfully submitted this 15th day of February, 2012.


                                      <u>s/ Jason B. Godwin</u>

Jason B. Godwin
Georgia Bar No. 142226
Busch, Slipakoff & Schuh, LLP
3350 Riverwood Parkway
Suite 1550
Atlanta, Georgia 30339
Phone:        (770) 790-3550
Fax:           (770) 790-3520
jgodwin@bssfirm.com
*Attorney for the Receiver*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2012, I electronically filed the foregoing and the exhibit hereto with the Clerk of the Court using the CM/ECF system which will send notification of such filling to the following:

<u>Attorneys for RREF SNV ACQUISITIONS, LLC</u>:

William C. Collins, Jr. (wcollins@burr.com)
Bret A. Beldt (bbeldt@burr.com)
Nicolas M. Gaxiola (ngaxiola@burr.com)
BURR & FOREMAN, LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203

<u>Attorneys for Defendants</u>:

John Christy (jchristy@swfllp.com)
Robert H. Snyder (rsnyder@swfllp.com)
SCHREEDER, WHEELER & FLINT, LLP
1100 Peachtree Street, NE
Suite 800
Atlanta, Georgia 30309-4516

                                         s/ Jason B. Godwin
                                    Jason B. Godwin
                                    Georgia Bar No. 142226
                                    Busch, Slipakoff & Schuh, LLP
                                    3350 Riverwood Parkway
                                    Suite 1550
                                    Atlanta, Georgia 30339
                                    Phone:      (770) 790-3550
                                    Fax:        (770) 790-3520
                                    jgodwin@bssfirm.com
                                    *Attorney for the Receiver*

## <u>CERTIFICATION OF COUNSEL</u>

I hereby certify that the foregoing Answer has been prepared in Times New Roman, 14 pt. font, one of the font and point selections approved by the Court in Local Rule 5.1(c).

       s/ Jason B. Godwin
_____
Jason B. Godwin
Georgia Bar No. 142226
Busch, Slipakoff & Schuh, LLP
3350 Riverwood Parkway
Suite 1550
Atlanta, Georgia 30339
Phone:     (770) 790-3550
Fax:       (770) 790-3520
jgodwin@bssfirm.com
*Attorney for the Receiver*

<u>EXHIBIT A – RECEIVER'S MONTHLY REPORT – JANUARY 2012</u>

_Wednesday, February 15th 2012_

**_Court Appointed Receiver Report GR001 to:_**

RRSEF SNV ACQUISITIONS, LLC (Plaintiff)

And

GREENVILLE, AL HOTEL, LLC
CIVIL ACTION FILE No: 1:11-CV-04171-TWT

RECEIVER:  McGLASHAN HOSPITALITY, LLC ("MH")
Report completed and presented by: Euan McGlashan, Managing Partner, McGlashan
Hospitality, LLC

Onsite team:

Mr. Ed Hauptmann
Ms. Lisa Gorge

Subject property:

# QUALITY INN & SUITES, GREENVILLE, ALABAMA (QI)



3350 Riverwood Parkway, Suite 1500 • Atlanta, Georgia 30339 • 770.547.7184 • mcglashanhospitality.com

To whom it may concern,

This report represents the time period, Monday, January 23rd, which was the agreed date for MH to assume possession of the hotel, through Tuesday, January 31. The report contains a written summary of events from handover, including all and any issues experienced from ownership and of the physical asset / operations discoveries. Also included is detailed financial data showing relevant information such as cash receipts, disbursements, accounts receivable, accounts payable, draw requests and reconciliations. All commentary and reporting is factual and unbiased.

### *Executive Summary.*

On Monday, January 23rd, MH sent 2 associates – Mr. Ed Hauptmann and Ms. Lisa Gorge to Greenville to assume handover of the subject property. We assumed possession at approximately noon. The General Manager, Mr. Sanjai Patel ("Jay") was on property and was asked to provide a full detailed property walkthrough, review and to submit all information and books on the property as per the court order so my team could conduct a detailed due diligence. Despite a friendly disposition and demeanor, at almost every point, Mr. Patel and his wife Vicky who operated the Front Desk, claimed ignorance when asked simple questions, most notably claiming that they kept no financial records at property level, except the invoices and payroll records.  We were advised by the Patels that they simply made needed purchases of supplies and sent all check stubs, bank statements, etc. to the owners and all financial reporting was done by the outside accounting firm of Williamson & Co, CPAs in Cartersville. GA.

Jay and his wife were living on property in two rooms with their son and a third room was used as storage of their personal property. The overall building quality and maintenance were poor including a leaking swimming pool which was drained to avoid fixing. Six rooms were out of service with various issues which had been neglected and not repaired.

Bank accounts and credit card processing were transferred into the name of MH immediately upon assuming receivership of the property and through our own analysis and compilation of outstanding invoices; we were able to ascertain that some $25,000 of overdue bills required payment including personal property tax, sales tax and 4th quarter payroll taxes. With only some $2400 in the operating account and with a $6000 payroll due, MH requested an initial capital infusion of $35,000 from RRSEF SNV ACQUISITIONS, LLC in order to fund the payments.



We contacted Mr. Lloyd Williamson, the hotel's CPA, and discovered that he had never been advised of the receivership and that he was unable to confer with us until speaking with his client.  On January 30, Lisa Gorge and I had a telephone conversation with Mr. Williamson and Mr. Anjebhai Patel, an owner, and were told that none of the records were maintained in Georgia, but were housed with Jay in Greenville.   We inquired about a financial statement issued from QuickBooks accounting software that had been provided by the attorneys and were told that neither Mr. Williamson nor Mr. Anjebhai Patel had knowledge of the hotel maintaining any QuickBooks records either.  Mr. Williamson only agreed to release critical information if he was paid an outstanding bill of $1272.85 which we naturally paid in order to continue our discoveries. Mr. Williamson asked for a few days to copy the information in his possession. On Thursday, February 2, we picked up the package of material from his office.  It was at this time we also learned that W2's and 1099's had not be in issued and were already overdue. I personally expedited their delivery to Greenville where Ed Hauptmann was taking verbal abuse from employees (and in some cases their spouses) as to why they had not received their W2's.

Ed Hauptmann officially assumed General Manager duties and was entered on the hotel payroll in that position. Interviews for a permanent General Manager have begun.

Ed Hauptmann continued through the week to show Mr. Patel information we were slowly gathering piece by piece that would suggest he knew more than he was sharing. On Friday, February 3, Mr. Jay Patel and his wife, Vicky met Ed Hauptmann and apologized profusely, claiming they did in fact have a large amount of information we had been requesting and that they had been told by their owners not to share it with the receiver. It transpired that  Jay Patel had indeed been operating a QB accounting system on his personal computer and after a review of the file, we discovered that Mr. Patel ceased making entries on 1 / 6 / 12 and  that no comprehensive notes on entries made up to that point were registered.  Jay Patel voluntarily resigned and left the property with his wife and child on Sunday, February 5, leaving us with further questions to be answered and short staffed given he and his wife operated the hotel.

Throughout this period, Ed Hauptmann contacted vendors and discovered that some of the invoices that had been represented by Jay Patel to be due had in fact been paid, while others that he had represented had been paid, were in fact still due. We also discovered that there were also invoices due that we had not been provided at all.  As a result of these findings, all payments of invoices ceased until we were able to obtain adequate records from the vendors to discern which payables were critical to the ongoing operations and which were for items that were the responsibility of the owners.

### *Financial Summary.*

Financial discoveries thus far which require further analysis and reconciliation are listed in bullet point fashion below:

Based on information received from Williamson & Co. CPAs:

1. The Federal Form 1065 US Return of Partnership Income for 2009 suggested that the property was purchased on 1/25/08 by Kishor & Anjebhai Patel for $766,000.  The hotel did not operate at all in 2009.  By the end of that year, property assets had increased to $2,424,816 with outstanding debt of $2,447,467.
2. The Federal Form 1065 US Return of Partnership Income for 2010 suggested that the Property generated $267,701 in revenue during the calendar year and generated a tax loss of $294,458, primarily resulting from $107,382 in depreciation expense, $136,825 in interest expense, and $35,399 in repairs and maintenance expense.
3. Based on the 2010 tax return, the assets were placed in service on April 30, 2010.  The individual assets were not detailed, but rather reported en-mass as follows: Building Improvements $1,897,571, Buildings $1,508,253, FF&E $8750, FF&E $213,398. The only items containing any detail at all were the Machinery and Equipment purchases of: Air Conditioners $40,681, Electronic Doors $8,500, Ice Machines $6500, Signage $17,122, Washer/Dryer $22,661. No further details of the purchases have yet been provided or discovered from the accounting firm or the owners.  Therefore a comparison to the asset inventory taken upon seizure of the property in order to ascertain any missing assets is virtually impossible without the invoices supporting the purchases.
4. Based upon the 2011 financial statements and general ledgers compiled by Williamson & Co, CPAs, capital assets had increased to $3,723,736 and the outstanding debt had risen to $3,901,246, including $930,835 of Partner loans reported that year.



3350 Riverwood Parkway, Suite 1500 • Atlanta, Georgia 30339 • 770.547.7184 • mcglashanhospitality.com

5. Based upon the 2011 compiled general ledger provided by Williamson & Co, CPAs, the property purchased $4,232 in microwaves and refrigerators, paid $2000 for a Dialtone Plus Security Camera, $374 for a Pool Light and $110 for breakfast equipment.  To date, we have only been able to locate the invoice for the breakfast equipment which appears to have been a misclassification of expense.  However, the QuickBooks file maintained by Jay Patel suggests that they paid $7,600 for the camera.  We are awaiting confirmation from the vendor on this.

6. The 2011 compiled general ledger also noted $26,500 in miscellaneous expense that included a draw for Mr. Anjebhai Patel of $15,000 on 11/21/11 and a draw for Mr. Kishor Patel of $8,000 on 12/8/11.

7. The January bank statement received on February 11, 2011 also revealed a canceled check written on January 5, 2012 to JDH Builders, one of Mr. Anjebhai Patel's companies, for $14,000 with a memo suggesting it was for "owner stores".  We believe this to be a draw since no invoice was found for such an amount.

8. According to Jay Patel and confirmed through the compiled general ledger and 2011 1099, he was paid $3,000 per month as a subcontractor.  None of the information provided to us to date suggest that his room and board was reported as income to Jay. Neither are acceptable accounting practices. This is also contrary to the Choice Hotels policies.

9. The Housekeepers and Laundry employees were being compensated on a piecemeal basis rather than a standard hourly rate.  The Housekeepers were being paid for a standard 26 minutes per room cleaned while the laundry attendant was paid a standard 8 minutes per room cleaned, regardless of the actual hours worked.  This practice is held by the Department of Labor to be a violation of the federal minimum wage law.  We have revised this policy and have ordered a time clock to track exact hours worked by all employees going forward.

10. Jay stated that since he started working on the 24th of the month, his monthly fee ran from the 24th of the month to the 23rd and that he was due $3,000 the day after we arrived on property.  We researched the payroll records on property and found no proof that Jay had been paid for the month of January. We requested bank records from Jay who said that all of the bank information resided with the owners in Kennesaw, GA and also requested all of the bank transactions for January from Ms. Brenda Simmons, the Financial Center Leader at BB&T in Greenville, who refused to release the information since we were not signers on the old accounts.  Since we had no information to the contrary, we paid Jay for the month of January.

11. On February 11, 2012, following Jay's departure we received a bank statement for January 2012 which revealed that he had written and cashed two counter checks:  one on 1/12/12 written to Cash in the amount of $10,291 and one on 1/18/12 written to BB&T for $2500.  Both were signed and cashed by Jay.  No details for the checks have been located.

12. Jay Patel, on departing, handed Ed Hauptmann more invoices not yet disclosed totaling $18,000. These included one for $6,000 in 2008 for bathroom vanity tops as well as an invoice for Plumbing Heating & Cooling for August 2011 repairs in the amount of $1,489.   According to Jay Patel, these are friends of the owners.  Although we continued confirming the other invoices directly with the vendors, we do not consider these two invoices to be essential for the ongoing operations and thus are deemed to be the responsibility of the owners.

13. Information gleaned from the Choice property management system reveals that current business mix on revenue appears to be 20% direct billing, 40% cash and 40% credit card.

14. A comparison of the compiled financial statements provided by Williamson & Co CPA's contradict the QuickBooks financial information provided by Jay Patel and presented by the attorneys:
    a) Where Jay Patel reported $42.07 in cash short/over, it appears that the accountant recorded $17,731.62 short.
    b) The accountant reported $4687.84 in July as Advertising-Electric Sign and Outdoor Lights, while Jay reported it as Electricity.
    c) The accountant reported $75,431.74 in Franchise fees, compared to Jay's $68,238.70.  The difference appears to be a bank reconciliation item for $7193.04.



d) The accountant reported $17,611.92 for insurance expense compared to Jay Patel's $16,711.92. The difference appears to be a $900 bank reconciliation adjustment in March.

e) The accountant reported $450 in lawn maintenance compared to Jay Patel's $2463.44.

f) The accountant reported the $23,000 of draws to Miscellaneous Expense.

Our report scheduled for March 15th, 2012 may provide further color on previous accounting and reconciliations as we potentially uncover more information.

### *Property Condition.*

In general the property condition is poor. Initial analysis strikes of poor construction and patchwork fixes of maintenance issues. First month highlights include:

1. The swimming pool. Jay Patel finally admitted the pool has a bad leak which would account for the incredibly high water bills previously paid. Jay said he drained the pool for winter and on further inspections, sand was noted bubbling up through pool floor where the steps meet the bottom which would indicate major repairs are required to fix. Bids are being sought for submission and we will revert back soonest on costs to re-line the pool However it is currently anticipated that the necessary repairs will be expensive. Jay indicated the pool has always leaked and that he allowed the pool to leak down to where we found it with one foot of water in the deep end by now green with algae. The owners had the depth of the pool raised from 8 feet deep to 5 feet deep.

2. The granite shower sides in the bathtubs have soap dishes which were simply glued in place. Those soap dishes have been falling into the metal tubs (coated with white porcelain paint finish) which in turn have badly marked and chipped the tubs linings. These will need to be re-finished and shower dishes attached to the shower sides with fasteners.

3. Many rooms have either all hot water only or cold water only. Plumbing problems from poor construction need corrected.

McGLASHAN HOSPITALITY LLC

3350 Riverwood Parkway, Suite 1500 • Atlanta, Georgia 30339 • 770.547.7184 • mcglashanhospitality.com

4. Two housekeepers had been allowed to 'live' in one bedroom which has subsequently been used for living, cooking and sleeping etc. by Jay and Vicky Patel. Its condition is poor with a complete carpet replacement and furnishings replacement required.

5. Paint is visibly peeling and chipping in many places including walkways, windows and siding.

6. 70% of the shrubs and bushes planted around the property are dead. Additionally, the rear lawn is overgrown with weeds. A significant landscape project is required to return the property exterior to that of a visually appealing property.

7. Doors need to be constructed to protect the guest laundry and vending from weather and theft. Currently anyone can access all machines and steal the cash or product.

8. The main hotel sign was never moved when the Mexican Restaurant in front of the property was completed. The sign is completely obscured from view and needs to be raised in order to become visible from surrounding roadways.

9. Great sign needs to be raised to become visible from Interstate or at the stop light at entry ramp.

10. OLD Mexico restaurant on the lot is the restaurant and banquet room of the original Holiday Inn. Its décor is similar to the hotel making it appear as one complex. The side of the restaurant facing the hotel pool and courtyard is in very poor condition. Broken glass, torn curtains and some areas not covered allow hotel guests to see a dirty storage area. The rear of the restaurant is used as a pot wash and mop station. It is adjacent to the hotel lobby where guests can view and smell the odors.



### _Operations._

Clearly this property has been neglected and mismanaged. Choice Hotels International complains that the majority of their correspondence goes unanswered. Jay Patel could offer no answers as to Sales & Marketing strategy, or how Choice has been used to drive business. There is no evidence that Jay had any plan to fill rooms. There is no business plan in place and there were no 'checks and balances' between Jay and the owners. There is no daily reporting of revenues and expenses and no regular communication between ownership and operator. The city claims no communication with the property be it the Chamber or City Organizations that could assist in promoting the property. Surrounding businesses and restaurants et al have never met Jay Patel nor send business there. On my personal visit, when I inquired as to how many rooms would be checking in that evening, my question was greeted with a wry smile and an answer of "none". Jay nor his wife Vicky had any ideas as to how to promote the property and simply wait to see if anyone books via the GDS or 'walks in'. As a result, occupancy for 2011, based on city sales tax returns, was 29.8%.

The payment policy for Housekeeping and laundry workers has been found to be similar to hotels in Tennessee in which the Department of Labor has determined to violate minimum wage regulations and the hotel could be fined significantly. These workers were paid by production rather than hours worked. . There were no DOL (Department of Labor) posters in staff areas showing minimum pay rates and associates rights, again, a legal requirement. We ceased the payment policy and obtained the necessary posters and posted them immediately.

Overall, the property will require a significant overhaul of operational policies and procedures as well as a strong sales and marketing plan with an effort to create awareness. This linked with property repairs, signage changes and the support of Choice Hotels International should result in an increase in business, despite the strong competition from the surrounding hotels (of which 80% are owned and managed by the same family who are well entrenched in the community). The McGlashan Hospitality team will reconnect with Choice Hotels and the community in order to begin building an overall operations strategy, ensuring the asset is no longer subject to further diminished value.



It is anticipated that further and potentially significant capital expenditure will be required to correct a number of conditions experienced, some of which were noted previously above. My personal recommendation is that all immediate and necessary repairs that affect guest experience directly be carried out as soon as possible following the bid processes from vendors being completed.

Yours sincerely,

Euan S. McGlashan
Managing Partner,
McGlashan Hospitality, LLC



## Financial Report for Business
### For the Period Beginning January 23, 2012 and Ending January 31, 2012

Name of Entity:  Greenville AL Hotel, LLC                    Case Number:  1:11-CV-04171-TWT
Date of Receivership:  January 23, 2012

| | | | |
|---|---|---|---:|
| 1 | CASH AT BEGINNING OF PERIOD | $ | 4,796.55 |
| 2 | RECEIPTS: | | |
| A. | Cash Sales | | 1,620.94 |
| B. | Collections on Post-Petition A/R | | 0 |
| C. | Collections on Pre-Petition A/R | | 0 |
| D. | Receipts from Plaintiff | | 35,000.00 |
| 3 | TOTAL RECEIPTS | | 36,620.94 |
| 4 | TOTAL CASH AVAILABLE FOR OPERATIONS | $ | 41,417.49 |
| 5 | DISBURSEMENTS | | |
| A. | PRE-PETITION EXPENSES | | |
| a. | Net Payroll | $ | 5,991.29 |
| b. | Garnishment | | 123.00 |
| c. | Telephone | | 524.51 |
| d. | Franchise Fees | | 3,568.22 |
| e. | Amenities | | 18.60 |
| f. | Breakfast Supplies | | 88.99 |
| g. | Advertising | | 3,650.00 |
| h. | Repairs & Maintenance | | 112.00 |
| 6 | TOTAL CASH DISBURSEMENTS | $ | 14,076.61 |
| 7 | ENDING CASH BALANCE (Line 4 - Line 6) | $ | 27,340.88 |

ATTACHMENT 2

## ACCOUNTS PAYABLE REPORT
For the Period Beginning January 23, 2012 and Ending January 31, 2012

Name of Entity:  Greenville AL Hotel, LLC               Case Number:  1:11-CV-04171-TWT

In the space below list all invoices or bills incurred and not paid since the filing of the petition.
Do not include amounts owed prior to filing the petition.

### *Post-Petition Payables*

| Date Incurred | Vendor | Description | Amount |
|---|---|---|---|
| 1/27/2012 | McGlashan Hospitality | Mobilization Fees | $ 7,500.00 |
| 1/27/2012 | McGlashan Hospitality | Travel & Meal Expense | 1,245.63 |
| 1/27/2012 | McGlashan Hospitality | Postage | 92.77 |
| 1/27/2012 | BB&T | Check Order | 455.52 |
| | | | $ 9,293.92 |

In the space below are all invoices or bills incurred prior to the filing of the petition but considered essential to the continued operation of the hotel.  These bills were included in funding requests but payment was withheld pending verification from outside sources, which was not finalized until February.

### *Pre-Petition Payables*

| | | | |
|---|---|---|---|
| 8/5/2011 | Advance Solutions | Fire Alarm Repairs | 414.00 |
| 11/15/2011 | Advance Solutions | Fire Alarm Repairs | 336.00 |
| 1/15/2011 | Alabama Dept of Revenue | Sales Tax -December 2011 | 1,305.13 |
| 1/1/2012 | Alabama Dumpster | Trash Collection | 150.15 |
| 12/27/2011 | Alabama Power | Utilities-December | 3,070.98 |
| 1/1/2012 | Brighthouse | December 2011/January 2012 | 2,752.74 |
| 1/1/2012 | Butler Co. Personal Property Tax | 2011 Personal Property Tax | 2,987.38 |
| 1/12/2012 | Choice Hotel International | 2011 Interest Fees | 2,070.26 |
| 11/22/2011 | Cerative Breakfast Concepts | Breakfast Supplies | 103.68 |
| 8/1-10/31/11 | David Stevenson | Lawn Care | 450.00 |
| 1/9/2012 | Dow Jones & Co | Newspapers | 52.50 |
| 12/9/2011 | Dow Jones & Co | Newspapers | 52.50 |
| 1/3/2012 | Ecolab | Housekeeping/Laundry Supplies | 227.66 |
| 12/1/2011 | Ecolab | Housekeeping/Laundry Supplies | 224.36 |
| 1/1/2012 | Ecolab | Housekeeping/Laundry Supplies | 227.66 |
| 12/15-1/17 | Greenville Waterworks | Utilities-December | 554.81 |
| 12/15/1/17 | Greenville Waterworks | Utilities-December Sprinkler | 19.73 |
| 10/11/2011 | Laundry Lux | Washer Repairs | 104.05 |
| 1/1/2012 | Market America | Advertising-Alabama Travel Guide | 525.00 |

ATTACHMENT 2-continued

## ACCOUNTS PAYABLE REPORT
For the Period Beginning January 23, 2012 and Ending January 31, 2012

Name of Entity:  Greenville AL Hotel, LLC                Case Number:  1:11-CV-04171-TWT

| | | | |
|---|---|---|---|
| 12/31/2011 | IRS | 4th Qtr 2011 941 Tax | 1,972.32 |
| 1/1/2012 | Alabama Dept of Revenue | 4th Qtr 2011 State W/H Tax | 534.99 |
| 1/2/2012 | Alabama Dept of Industrial Rel. | 4th Qtr 2011 State Unemployment Tax | 285.36 |
| 1/3/2012 | IRS | 4th Qtr 2011 940 Tax | 449.45 |
| 12/31/2011 | SEAGD | Utilities-Dec 2011 | 503.07 |
| 1/1-1/20/12 | Sysco | Breakfast Supplies | 610.22 |
| | | | 19,984.00 |

ACCOUNTS PAYABLE RECONCILIATION (Post Petition-Only)

| | | |
|---|---|---|
| Opening Balance (total from prior period) | $ | - |
| Plus:  New Indebtedness Incurred This Month | | 9,293.92 |
| Plus:  Prior Accounts Payable | | 19,984.00 |
| Ending Month Balance | $ | 29,277.92 |

ATTACHMENT 3

# BANK ACCOUNT RECONCILIATION

For the Period Beginning January 23, 2012 and Ending January 31, 2012

Name of Entity:  Greenville AL Hotel, LLC                Case Number:  1:11-CV-04171-TWT

    A separate sheet is required for each bank account, including all savings and investments accounts, i.e. certificates of deposit, money market accounts, stocks and bonds, etc.

NAME OF BANK:      BB&T
ACCOUNT NAME:      McGlashan Hospitality-Quality Inn Greenville
ACCOUNT NUMBER: 82193
PURPOSE OF ACCOU] Operating

| | |
|---|---:|
| Beginning Balance | $ - |
| Total Deposits Made | 38,620.94 |
| Total Amount of Checks Written/Wires Sent* | 14,962.32 |
| Service Charges | - |
| Closing Balances | $ 23,658.62 |

| | |
|---|---:|
| Number of First Check Written this Period | 091 |
| Number of Last Check Written this Period | 096 |
| Total number of Checks Written this Period | 7 |

\*  These amounts include $7,000.00 transferred from the Operating Account to the Payroll Account

ATTACHMENT 3.1

# BANK ACCOUNT RECONCILIATION
For the Period Beginning January 23, 2012 and Ending January 31, 2012

Name of Entity:  Greenville AL Hotel, LLC                 Case Number:  1:11-CV-04171-TWT

    A separate sheet is required for each bank account, including all savings and investments accounts, i.e. certificates of deposit, money market accounts, stocks and bonds, etc.

| | | |
|---|---|---|
| NAME OF BANK: | BB&T | |
| ACCOUNT NAME: | McGlashan Hospitality-Quality Inn Greenville | |
| ACCOUNT NUMBER: 82215 | | |
| PURPOSE OF ACCOU] | Payroll | |

| | | |
|---|---:|---:|
| Beginning Balance | $ | - |
| Total Deposits Made | | 9,796.55 |
| Total Amount of Checks Written/Wires Sent* | | 6,114.29 |
| Service Charges | | - |
| Closing Balances | $ | 3,682.26 |

| | |
|---|---:|
| Number of First Check Written this Period | 091 |
| Number of Last Check Written this Period | 100 |
| Total number of Checks Written this Period | 10 |

ATTACHMENT 4

## CHECK REGISTER

For the Period Beginning January 23, 2012 and Ending January 31, 2012

Name of Entity:  Greenville AL Hotel, LLC                    Case Number:  1:11-CV-04171-TWT

NAME OF BANK:        BB&T
ACCOUNT NAME:       McGlashan Hospitality-Quality Inn Greenville
ACCOUNT NUMBER:   82193
PURPOSE OF ACCOUN Operating

Account for All Check Numbers, Including Voided, Lost, Stopped Payments, Etc.

| Date | Check Number | Payee | Purpose | Amount |
|------|--------------|-------|---------|--------|
| 1/27/2012 | 091 | Sysco | Pre-Petition Food Cost | $      88.99 |
| 1/27/2012 | 092 | Camellia Communications | Pre-Petition Telephone | 524.51 |
| 1/27/2012 | 093 | State of Alabama DOT | Pre-Petition Advertising | 1,400.00 |
| 1/27/2012 | 094 | VOID | | - |
| 1/27/2012 | 095 | Lamar | Pre-Petition Advertising | 2,250.00 |
| 1/27/2012 | 096 | Orkin | Pre-Petition Pest Control | 112.00 |
| 1/27/2012 | 097 | Choice Hotels Intl | Pre-Petition Franchise Fee | 3,568.22 |
| 1/27/2012 | 098 | AS Hospitality | Pre-Petition Fire Alarm Maint | 18.60 |
| 1/27/2012 | Wire | Transfer to Payroll Acct 82215 | Pre-Petition Payroll | 7,000.00 |
| | | | | 14,962.32 |

ATTACHMENT 4.1

## CHECK REGISTER
For the Period Beginning January 23, 2012 and Ending January 31, 2012

Name of Entity:  Greenville AL Hotel, LLC                    Case Number:  1:11-CV-04171-TWT

NAME OF BANK:        BB&T
ACCOUNT NAME:        McGlashan Hospitality-Quality Inn Greenville
ACCOUNT NUMBER:  82215
PURPOSE OF ACCOUNT Payroll

Account for All Check Numbers, Including Voided, Lost, Stopped Payments, Etc.

| Date | Check Number | Payee | Purpose | Amount |
|------|-------|-------|---------|--------|
| 1/27/2012 | 91 | Amanda Trent | Payroll | $      57.80 |
| 1/27/2012 | 92 | Felicia Patterson | Payroll | 398.67 |
| 1/27/2012 | 93 | Kim Jenkins | Payroll | 103.04 |
| 1/27/2012 | 94 | Elaine Johnson | Payroll | 524.10 |
| 1/27/2012 | 95 | Eldra Malloy | Payroll | 83.99 |
| 1/27/2012 | 96 | ACSPC | Employee Garnishment Payment | 123.00 |
| 1/27/2012 | 97 | Kim Hess | Payroll | 369.12 |
| 1/27/2012 | 98 | Paisley Hill | Payroll | 497.10 |
| 1/27/2012 | 99 | Wendy Jenkins | Payroll | 160.02 |
| 1/27/2012 | 100 | Chancii Hawthorne | Payroll | 94.85 |
| 1/27/2012 | Counter Ck | Jay & Vicky Patel | Payroll | 3,702.60 |

$      6,114.29